UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| MARTIANCRAFT, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )   Case No.: 2:22cv432 |
| BENJAMIN BROOKS, | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Benjamin Brooks's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and memorandum in support. ECF Nos. 15, 16. Plaintiff MartianCraft, LLC ("MartianCraft") filed a response, ECF No. 18, and Brooks filed a reply, ECF No. 22. On February 23, 2023, this case was referred to the undersigned United States Magistrate Judge ("undersigned") for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). ECF No. 24. The Court held a hearing on March 8, 2023. ECF No. 27. Accordingly, the Motion is ripe for report and recommendation. For the reasons set forth below, the undersigned **RECOMMENDS** Mr. Brooks's Motion to Dismiss, ECF No. 15, be **DENIED**.

### I. FACTUAL BACKGROUND

As this is Mr. Brooks's Motion to Dismiss, the facts are presented in accordance with MartianCraft's Amended Complaint and inferences are drawn in MartianCraft's favor.[1]

---

[1] When ruling on a motion to dismiss, courts must assume all the facts alleged in the complaint are true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Additionally, in a motion to dismiss, all reasonable inferences are drawn in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

MartianCraft is a software development company. ECF No. 11 at ¶ 10. In the beginning of 2016, MartianCraft "was experiencing considerable financial difficulty." ECF No. 11 at ¶ 11. MartianCraft's Board of Directors ("Board") consisted of Robert Rhyne, Nathan Eror, Kyle Richter, and Jeff LaMarche.[2] ECF No. 11 at ¶ 11. Mr. Rhyne, Mr. Eror, and Mr. LaMarche resigned from the Board and left Mr. Richter as the sole Manager and Director. ECF No. 11 at ¶ 11. At this time, Mr. Brooks was the Chief Operations Officer ("COO"). ECF No. 11 at ¶ 11.

As COO, Brooks signed an Employment Agreement. ECF No. 11, attach. 11. The Employment Agreement has a non-competition clause stating Brooks, during his employment and up to one year after, shall not "[a]ct or conduct himself in any manner which is contrary to the best interests of [MartianCraft] or which may result in financial damage to [MartianCraft.]" ECF No. 11, attach. 11 at 3. Importantly, Brooks agreed "to pay any and all reasonable attorney fees sustained by [MartianCraft] in connection with any breach of [the Employment] Agreement." ECF No. 11, attach. 11 at 3. The Employment Agreement has a choice of law provision stating it "shall be construed and enforced in accordance with and governed by the laws of the state of Colorado." ECF No. 11, attach. 11 at 4.

MartianCraft's Operating Agreement includes an indemnification clause wherein MartianCraft "agrees to indemnify each Indemnitee . . . for any judgments, settlements, penalties, fines, expenses and attorneys' fees incurred in a proceeding to which the Indemnitee is a party because it is an Indemnitee." ECF No. 14, attach. 5 at 38. Indemnitees are "any Member or persons to whom the Members have delegated authority . . . as well as any person acting on behalf of a Member pursuant to legal authority." ECF No. 14, attach. 5 at 38.

---

[2] MartianCraft is governed by Members who "have complete authority and exclusive control over the management of the business and affairs of [MartianCraft]." ECF No. 14, attach. 5 at 37. Members then may appoint people "to serve on the Board of Directors as . . . managers or as officers . . . ." ECF No. 14, attach. 5 at 37.

In 2017, MartianCraft became financially successful, and Mr. Brooks, Carlos Servera, and Mr. Rhyne planned to remove Mr. Richter.[3] ECF No. 11 at ¶ 12. In October 2017, Mr. Rhyne hired the law firm Eckert Seamans Cherin & Mellott, LLC, "to orchestrate Mr. Richter's ouster."[4] ECF No. 11 at ¶ 13. The demand for Mr. Richter's removal was framed as a conflict of interest based on MartianCraft's business dealings with Dragon Forged Software, LLC, which Mr. Richter owns. ECF No. 11 at ¶¶ 14–15. Mr. Brooks agreed to press this issue and participated in the attempted ouster "under an apparent belief that [MartianCraft] would never be in a position to give him profit sharing bonuses so long as the Dragon Forged debt remained outstanding." ECF No. 11 at ¶ 16. In November 2017, MartianCraft had five members: Mr. Eror, Mr. Rhyne, Mr. Richter, Mr. Keeley, and Nick Keppol. ECF No. 11 at ¶ 17.

On November 8, 2017, a Consent of Members in Lieu of Meeting ("November Consent") was executed by Mr. Eror and Mr. Rhyne, which purported to remove Mr. Richter; appointed Mr. Brooks, Mrs. Rhyne (Mr. Rhyne's wife), and Jaimee Newberry as members of the Board; and appointed Mr. Brooks as Chief Executive Officer ("CEO") and Mr. Keeley as Chief Technology Officer ("CTO"). ECF No. 11 at ¶ 17. On November 9, 2017, attorney Montgomery drafted a letter documenting the November Consent for Mr. Brooks and Mr. Rhyne to review. ECF No. 11 at ¶ 18. This draft letter was sent to Mr. Brooks's personal email address "in order to avoid any record that Mr. Brooks was conspiring with Mr. Rhyne against current management." ECF No.

---

[3] The people involved in the efforts to remove Mr. Richter are referred to as "the alleged conspirators." MartianCraft under the control of the alleged conspirators will be referred to as "formerly-controlled MartianCraft."

[4] Mr. Brooks's current attorney is Michael Montgomery from Eckert Seamans Cherin & Mellott, the same attorney who represented the formerly-controlled MartianCraft. The undersigned inquired at the hearing about a potential conflict of interest in light of Virginia Rule of Professional Responsibility 1.9. ECF No. 28 at 13–14. MartianCraft's counsel did not represent they would be seeking disqualification based on conflict of interest, and this issue presently is not before the Court. However, the undersigned, mindful of the ethical responsibilities governing the legal profession, notes that Mr. Montgomery's representation of Mr. Brooks against his former client MartianCraft, raises conflict of interest questions.

11 at ¶ 18. At a subsequent court hearing about the attempted takeover, Mr. Brooks admitted he was aware of documents showing Mr. Keppol and Mr. Keeley were Members and received K-1s reflecting that status – despite their not being involved in the November Consent. ECF No. 11 at ¶ 26.

Thus far, Mr. Brooks and the conspirators incurred $485,533.17 in legal fees "to defend the attempted takeover . . ." and $522,406.34 in legal fees for Mr. Richter's counsel based on the indemnity clause. ECF No. 11 at ¶ 43. Mr. Brooks, in concert with the alleged conspirators, is alleged to have committed other bad acts: paid Mrs. Rhyne $180,600 in salary, director fees, and bonuses; increased Mr. Servera's, Mr. Keeley's, and Brooks's salaries by approximately thirty-five, twenty-two, and twenty-two percent respectively even though the average raise for other employees was approximately four percent; granted Mr. Keeley $86,782.63 in unjustified expense reimbursements; reimbursed Mr. Rhyne almost $10,000 in legal fees; caused MartianCraft to abandon products it spent hundreds of thousands of dollars developing; deleted electronic files; and more. ECF No. 11 at ¶ 43.

## II. PROCEDURAL BACKGROUND

On December 22, 2017, formerly-controlled MartianCraft filed a complaint in Richmond Circuit Court ("Richmond court") seeking a declaratory order that the takeover was proper, judgment against Mr. Richter for $39,000, a turnover of Mr. Richter's personal computers, and dissociation of Mr. Richter as a Member. ECF No. 11 at ¶ 21. Mr. Richter filed a counterclaim and a special plea that the takeover was improper because it violated MartianCraft's Operating Agreement. ECF No. 11 at ¶ 22. Formerly-controlled MartianCraft filed a motion for preliminary injunction to permanently lock Mr. Richter out of MartianCraft's online platforms. ECF No. 11 at ¶ 24. On February 2, 2018, the Richmond court held a hearing on the injunction and denied the

4

request for injunctive relief. ECF No. 11 at ¶¶ 26–27. Formerly-controlled MartianCraft then filed a motion to amend the complaint and increased the damage claim from $39,000 to $2,500,000 plus $350,000 in punitive damages, allegedly to put pressure on Mr. Richter. ECF No. 11 at ¶ 28. In the Richmond court litigation, "various [alleged c]onspirators indicated that they would rather see [MartianCraft] destroyed than control returned to Mr. Richter." ECF No. 11 at ¶ 43. On October 28, 2019, the Richmond court issued a letter opinion and subsequent order on November 7, 2019, holding that the takeover by Mr. Brooks and the alleged conspirators was improper and violated the Operating Agreement.[5] ECF No. 11 at ¶ 38.

On November 13, 2020, MartianCraft filed a notice of removal in this court, removing a separate case from Norfolk Circuit Court, filed by Mr. Rhyne, Mr. Keeley, and Mrs. Rhyne. *Rhyne, et al. v. MartianCraft*, 2:20cv568, ECF No. 1 (E.D. Va. Nov. 13, 2020). In that case, attorney Montgomery represented Mr. Rhyne, Mr. Keeley, and Mrs. Rhyne. That case was voluntarily dismissed after the parties reached a settlement. *Rhyne, et al. v. MartianCraft*, 2:20cv568, ECF No. 39 (E.D. Va. June 28, 2022); ECF No. 11 at ¶ 5 n.2.

On October 18, 2022, MartianCraft filed its Complaint in this action asserting claims for indemnity/breach of contract, unjust enrichment, tortious interference with business and attempted tortious interference, and conversion. ECF No. 1. After Mr. Brooks filed a motion to dismiss, ECF No. 7, MartianCraft filed an Amended Complaint asserting claims for breach of contract (Count I), unjust enrichment (Count II), statutory and common law conspiracy (Count III), and conversion (Count IV), ECF No. 11. Mr. Brooks then filed a Motion to Dismiss the Amended

---

[5] Additionally, the Richmond court held MartianCraft's Operating Agreement was clear and unambiguous in that it gave only MartianCraft's Board of Directors the authority to remove members of the Board. ECF No. 11 ¶ 39, attach. 9 at 6. The Richmond court held further that even if the Operating Agreement was ambiguous, the parole evidence would support its finding. ECF No. 11, attach. 9 at 7. This Court agrees with the determination that the Operating Agreement is clear and unambiguous.

Complaint and a memorandum in support on January 19, 2023. ECF Nos. 15, 16. On February 2, 2023, MartianCraft filed its opposition to the Motion to Dismiss, ECF No. 18, on February 8, 2023, Mr. Brooks replied, ECF No. 22.

On February 23, 2023, a Referral Order was entered directing the undersigned to conduct hearings and submit proposed findings of fact and recommendations for the disposition of the Motion to Dismiss Amended Complaint. ECF No. 24. The undersigned held a hearing on March 8, 2023, at which Mr. John McIntyre appeared for MartianCraft and Mr. Montgomery appeared for Mr. Brooks. ECF No. 27. A transcript was prepared and has been filed. ECF Nos. 27, 28. Accordingly, the matter is ripe for recommended disposition.

The questions before the Court are whether MartianCraft has stated a sufficient claim to survive a motion under Federal Rule of Civil Procedure 12(b)(6) that: a) Mr. Brooks breached his Employment Agreement; b) Mr. Brooks was unjustly enriched at MartianCraft's expense; c) Mr. Brooks participated in a statutory or common law conspiracy; and/or d) Mr. Brooks is liable for conversion of MartianCraft's property.

### III. JURISDICTION AND VENUE

MartianCraft is a limited liability company organized under and existing in Virginia. ECF No. 11 at ¶ 1. Mr. Richter is the sole member, manager, officer, and director, and a resident of the State of Alaska. ECF No. 11 at ¶ 1. Mr. Brooks is a resident of the State of Texas. ECF No. 11 at ¶ 2. Therefore, there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. ECF No. 11 at ¶ 43. Accordingly, this Court properly has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). This Court also is the proper venue pursuant to 28 U.S.C. § 1391.

## IV. STANDARD OF REVIEW

A motion under Rule 12(b)(6) argues the plaintiff failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts test the sufficiency of the claims in the complaint. *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 211 (4th Cir. 2019).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must allege "more than labels and conclusions" and "a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp.*, 550 U.S. at 545. Importantly, a plaintiff must "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* In evaluating this Motion, the Court can properly consider Mr. Brooks's Employment Agreement, MartianCraft's Operating Agreement, and other attachments to the Amended Complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (holding in ruling on a 12(b)(6) motion a court may consider some extrinsic evidence if it is "integral to and explicitly relied on in the complaint" and the other side does not challenge the evidence's authenticity).

## V. CHOICE OF LAW

This Court must decide which law applies to the various questions in front of it. When a federal court exercises diversity jurisdiction, the court must apply the substantive law of the forum state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Choice of law is a substantive matter, so federal courts exercising diversity jurisdiction should apply choice of law

7

rules from their forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Virginia, statute of limitations for breach of contract are generally considered procedural, not substantive. *RMS Tech., Inc. v. TDY Indus., Inc.*, 64 F. App'x 853, 857 (4th Cir. 2003); *L-3 Commc'ns, Corp. v. Serco, Inc.*, 926 F.3d 85, 96 (4th Cir. 2019) ("Under Virginia law, statutes of limitations are considered procedural rules governed by the law of the forum state.").

In Virginia, choice of law provisions in contracts or operating agreements are generally viewed favorably. *Run Them Sweet, LLC v. CPA Glob. Ltd.*, 224 F.Supp.3d 462, 465 (E.D. Va. 2016). Specifically, forum selection clause provisions are given full effect unless they are unfair, unreasonable, affected by fraud or unequal bargaining power, or if the parties did not intend to be governed by the designated law. *Paul Bus. Sys., Inc. v. Canon U.S.A.-Inc.*, 240 Va. 337, 342 (1990); *Senture, LLC v. Dietrich*, 575 F.Supp.2d 724, 727 (E.D. Va. 2008).

Here, Mr. Brooks's Employment Agreement has a choice of law provision for Colorado. ECF No. 11, attach. 11 at 4. Colorado law has a general three-year statute of limitations for breach of contract claims. Colo. Rev. Stat. § 13-80-101(1)(a). However, when the amount at issue in a breach of contract claim is for a "liquidated debt or an unliquidated, determinable amount" then the Colorado statute of limitations is six years. Colo. Rev. Stat. § 13-80-103.5(1)(a). In Virginia, on the other hand, the statute of limitations for a breach of written contract is five years from the date the cause of action accrues. Va. Code § 8.01-246(2). Virginia law will apply the statute of limitations from another state that governs the contract if the other state's statute of limitations is more restrictive than Virginia's. *East West, LLC v. Rahman*, 873 F.Supp.2d 721, 727 (E.D. Va. 2012).

The breach of contract claim here is for a determinable amount, so Colorado's six-year statute of limitations would apply. However, because Virginia's statute of limitations is more

restrictive at five years, it applies instead, but the substantive consideration of the breach of contract claim is governed by Colorado law. As MartianCraft's unjust enrichment claim, statutory and common law conspiracy, and conversion claims do not relate to the Employment Agreement with the Colorado choice of law provision, they are all governed by Virginia law since Virginia is the forum state.

## VI. DISCUSSION

MartianCraft asserts four claims: a) breach of contract, b) unjust enrichment, c) statutory and common law conspiracy, and d) conversion. ECF No. 11 at ¶¶ 47–91. The Court will address each in turn.

### A. Breach of contract claim

In Count I MartianCraft alleges Mr. Brooks, by participating in the attempt to oust Mr. Richter from the company, "breached the Employment Agreement by acting in a manner which was contrary to [MartianCraft's] best interests." ECF No. 11 at ¶ 53. MartianCraft further claims Mr. Brooks and the alleged conspirators "strip[ped] [MartianCraft] of assets for their personal benefit" and that they "strung out the state court litigation" thereby incurring over one million dollars in legal fees to MartianCraft's detriment, which MartianCraft seeks as damages. ECF No. 11 at ¶¶ 51, 55–56.

Mr. Brooks contends that the breach of contract claim is barred by Colorado's three-year statute of limitations, and that, in any event, the Amended Complaint failed to sufficiently state a claim for breach of contract. ECF No. 16 at 5–8. Mr. Brooks contends that MartianCraft "fails to allege a single wrongful act that [Mr.] Brooks undertook that would form the basis for a breach of contract claim." ECF No. 16 at 8. Additionally, Mr. Brooks argues this claim should fail because attorneys' fees sought by a prevailing party in litigation, which MartianCraft claims as the measure

of damages, are generally prohibited by the American Rule. ECF No. 16 at 8.

Starting with this last argument first, the American Rule does not apply here. MartianCraft is not claiming attorneys' fees because it was the prevailing party in the Richmond court litigation. Instead, it is claiming attorneys' fees as the measure of damages provided in the Employment Agreement. *See* ECF No. 11, attach. 11 at 3 ("The Employee agrees to pay any and all reasonable attorney fees sustained by the Company in connection with any breach of this Agreement.").

Further, as aforementioned, Virginia's five-year statute of limitations applies to this claim, but Colorado's law applies to the substantive consideration of the breach of contract claim. Under Colorado law, the elements for breach of contract are: 1) the existence of a contract; 2) performance by the plaintiff or a justification for non-performance; 3) defendant's failure to perform; and 4) resulting damages to the plaintiff. *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008).

Here, MartianCraft did not identify a specific date it alleges the breach of the contract occurred. From the facts alleged in the Amended Complaint, there are several events which ostensibly would have triggered the running of the statute of limitations for a breach of contract claim against Mr. Brooks: November 8, 2017, when the November Consent issued (ECF No. 11 at ¶ 17); November 9, 2017, when attorney Montgomery sent the draft letter to the alleged conspirators, including Mr. Brooks at his private email address, proposing Mr. Richter's removal from MartianCraft (ECF No. 11 at ¶ 18); or December 22, 2017, when formerly-controlled MartianCraft, with Mr. Brooks as CEO, commenced litigation against Mr. Richter in the Richmond court (ECF No. 11 at ¶ 21). Since the instant lawsuit was filed this case on October 18, 2022, all of these events occurred within the five-year statute of limitations. ECF No. 1.

Finally, MartianCraft has asserted sufficient facts to plausibly state a claim for breach of

contract. MartianCraft referenced and attached to its Amended Complaint a copy of Mr. Brooks's Employment Agreement. ECF No. 11, attach. 11. The Employment Agreement required Mr. Brooks to not "conduct himself in any manner which is contrary to the interests of [MartianCraft] or which may result in financial damages to [MartianCraft]." *Id.* at 3. MartianCraft performed under the Employment Agreement by employing Mr. Brooks as its COO. MartianCraft alleges sufficient facts to show that Mr. Brooks failed to perform by engaging in conduct that harmed MartianCraft and caused it to incur substantial legal fees, resulting in financial damages to the company. *E.g.*, ECF No. 11 at ¶ 43. For example, MartianCraft alleges Mr. Brooks, acting in concert with the alleged conspirators, accepted a job with one of MartianCraft's largest customers, incurred and paid over one million dollars in legal fees to the Eckert Seamans law firm, gave disproportionate raises to themselves, abandoned products MartianCraft spent hundreds of thousands of dollars developing, stalled MartianCraft's operations, and deleted MartianCraft's electronic files. ECF No. 11 at ¶¶ 43, 53 n.7. By alleging such specific facts, MartianCraft has asserted more than mere conclusions; it has sufficiently alleged a breach of contract claim at this stage of the proceedings.

Accordingly, the undersigned recommends Mr. Brooks's Motion to Dismiss, ECF No. 15, be denied with respect to Count I, MartianCraft's breach of contract claim.

**B.     Unjust enrichment claim**

In its unjust enrichment claim MartianCraft seeks the attorneys' fees paid by the formerly-controlled company to attorney Montgomery's law firm for Mr. Brooks's benefit in the litigation. ECF No. 11, ¶¶ 57–68. MartianCraft alleges that Mr. Brooks was neither a party to the Operating Agreement, nor to any contract between Mr. Brooks and MartianCraft that provided for MartianCraft to pay Mr. Brooks's legal fees or allowed Mr. Brooks to use MartianCraft's attorney

for his personal interests. *Id.* at ¶¶ 58, 59. MartianCraft alleges that it paid these attorneys' fees, that Mr. Brooks used MartianCraft's counsel "to advance his personal interests[,]" and that Mr. Brooks was aware he received this benefit. ECF No. 11 at ¶¶ 60, 62–65. MartianCraft claims Mr. Brooks reasonably expected he would need to repay these legal fees. ECF No. 11 at ¶ 66. By receiving this benefit to which he was not entitled, MartianCraft claims Mr. Brooks was unjustly enriched.

In his Motion to Dismiss, Mr. Brooks contends that the unjust enrichment claim must fail because such a claim requires a "contract implied in law," but that no such contract exists. ECF No. 16 at 9. Mr. Brooks contends he was brought into the litigation at Mr. Richter's request due to Mr. Brooks's position with the company. *Id* at 10. Mr. Brooks contends he never promised or agreed to pay for counsel and thus cannot be found to have accepted a benefit for which he promised to pay. *Id.* at 9–10.

The elements of unjust enrichment are: 1) the plaintiff conferred a benefit on the defendant; 2) the defendant knew of the benefit and should reasonably have expected to repay; and 3) the defendant accepted or retained the benefit without paying for its value. *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008). Unjust enrichment is a contract implied in law that requires someone who accepts benefits like services or money to make reasonable compensation. *James G. Davis Constr. Corp. v. FTJ, Inc.*, 298 Va. 582, 591 (2020).

"'[T]here can be no recovery in quantum meruit where a valid express contract between the parties exists.'" *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir. 1992) (citing *In re Stevenson Assoc.*, 777 F.2d 415, 421–22 (8th Cir. 1985)). Here, there is no express agreement between MartianCraft and Mr. Brooks regarding indemnity. Mr. Brooks's argument that he never expressly promised to pay for the legal services rendered on

his behalf in the Richmond court litigation must fail, however. "Where one renders services for another at the latter's request, the law, in the absence of an express agreement, implies a promise to pay what the services are reasonably worth." *Marine Dev. Corp. v. Rodak*, 225 Va. 137, 142 (1983). The Amended Complaint alleges sufficient facts that a promise can be implied from the allegations that Mr. Brooks participated in a wrongful attempt to wrest control of the company away from Mr. Richter, and then caused the company to pay for his legal expenses when he was not entitled to do so. MartianCraft alleges that Mr. Brooks knew his attorneys' fees were paid for by MartianCraft and that he should have reasonably expected to repay these because he was not entitled to indemnification. ECF No. 11 at ¶¶ 63–66. Finally, MartianCraft provides facts to show Mr. Brooks accepted the legal representation, but has not reimbursed MartianCraft, and has therefore been unjustly enriched. ECF No. 11 at ¶ 67.

Accordingly, the undersigned recommends that Mr. Brooks's Motion to Dismiss, ECF No. 15, should be denied with respect to Count II, MartianCraft's unjust enrichment claim.

### C. Statutory and common law conspiracy claim

In Count III, MartianCraft claims Mr. Brooks and the alleged conspirators engaged in a statutory conspiracy in violation of Virginia Code §§ 18.2-499 and 18.2-500, and a common law conspiracy in connection with their efforts to seize control of MartianCraft from Mr. Richter. ECF No. 11 at ¶¶ 69-85. Count III alleges, *inter alia*, that part of the conspiracy, besides removing Mr. Richter from the company, was to initiate expensive litigation against him to force him into a settlement, misappropriate MartianCraft's assets for their own benefit, and loot the company. *Id.* at ¶¶ 74, 75, 78-80.

Mr. Brooks argues MartianCraft's conspiracy claims should fail for several reasons. First, Mr. Brooks insists that only a statutory conspiracy claim has been asserted based on the allegations

13

made and the relief requested. ECF No. 16 at 10. Mr. Brooks further contends that any common law conspiracy claim is barred by the statute of limitations since it was not asserted in the original complaint. *Id.* at n.6. Second, Mr. Brooks contends that since he and the alleged conspirators attempted the takeover of the company while they were agents of MartianCraft, the alleged conspiracy involves "only a single entity," and thus is a legal impossibility under the intracorporate immunity doctrine. *Id.* at 11. Relatedly, since the other alleged conspirators have been dismissed from all litigation with prejudice, Mr. Brooks contends no viable conspiracy theory can be asserted against him individually. *Id.* at 12. Third, Mr. Brooks asserts that MartianCraft failed to particularly identify any unlawful conduct. *Id.* Finally, Mr. Brooks asserts that "the basis of [MartianCraft's common law conspiracy] claim also appears to be Brooks['s] alleged involvement in the November Consent" but that MartianCraft has failed to plead facts about his role therein. *Id.* at 13.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose . . . ." *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 402 (1985). "[A]ctions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215 (2014). Non-performance of a contract is insufficient for the unlawful act requirement for conspiracy. *Id.* at 217. "[I]n Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed." *Almy v. Grisham*, 273 Va. 68, 80 (2007).

In Virginia, statutory conspiracy only requires legal malice, which is acting intentionally, purposely, and without lawful justification. *Commercial Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 249 Va. 39, 47 (1995). Actual malice is not required. *Id.*

14

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means . . . shall be jointly and severally guilty or a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

Va. Code § 18.2-499(A).

Here, MartianCraft has asserted sufficient facts to support a claim for statutory conspiracy. Regarding the "two or more persons" requirement, MartianCraft asserted that Mr. Brooks worked in coordination with the alleged conspirators to fashion the takeover of MartianCraft, instigate expensive litigation to force Mr. Richter to settle, and expend company funds on high salaries. ECF No. 11 at ¶¶ 12, 18, 71–80. First, as MartianCraft noted and Mr. Brooks did not contest (ECF No. 22, *passim*), the intracorporate immunity doctrine does not apply because included among the alleged conspirators were individuals who were neither Directors nor employees of MartianCraft, and thus not its agents.[6] Additionally, the fact that the other alleged conspirators settled their cases is of no moment. Mr. Brooks cites no authority for the proposition that a settlement with certain conspiracy participants operates to release from liability all other members of the conspiracy. ECF Nos. 16, 22 *passim*. In fact, Virginia Code § 8.01-35.1 specifically provides for circumstances where the release of some wrong-doers will not release others. Consequently, the two or more persons requirement is met.

MartianCraft averred facts plausibly alleging that Mr. Brooks acted willfully and maliciously to injure the company when he acted with others to waste and misappropriate company funds as just described. ECF No. 11 at ¶¶ 12, 18, 71–80. The Amended Complaint also provides

---

[6] Mrs. Rhyne and Ms. Newberry were not affiliated with MartianCraft prior to the takeover (ECF No. 11 at ¶¶ 5, 71-72) and Mr. Rhyne and Mr. Eror were members. Moreover, as MartianCraft also noted, while a principal (MartianCraft) and its agents (Mr. Brooks *et al.*) are viewed as a single entity when conspiring together, agents who conspire against their principal, as is alleged here, should not be viewed as a single entity under that circumstance. ECF No. 18 at 25, n.13. Mr. Brooks did not contest this proposition in his reply. ECF No. 22, *passim*.

15

specifics recounting Mr. Brooks' alleged involvement, including manufacturing a dispute regarding Dragon Forged as an excuse to remove Mr. Richter from the company and take over his job, submitting a false affidavit to support the takeover attempt, and assisting in the effort to file an amended complaint in state court grossly inflating the damages purportedly sought from Mr. Richter. ECF No. 11, ¶¶ 14-15, 18-19, 24-26, 28-20. MartianCraft thus has alleged facts that Mr. Brooks and others intentionally, purposely, and without lawful justification engaged in conduct in order to injure the company, which is sufficient to assert a plausible claim for statutory conspiracy.

Moreover, MartianCraft sufficiently asserts a plausible claim for common law conspiracy. First, despite the fact that a common law conspiracy count was not specifically asserted in the original Complaint, the Court finds that this claim relates back to that Complaint. An amended pleading may relate back, for statute of limitations purposes, to when the original pleading was filed. Fed. R. Civ. P. 15(c). Specifically, "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The common law conspiracy claim in the Amended Complaint arises out of the same conduct, transaction, or occurrence detailed in the original Complaint, therefore it relates back to that Complaint and is not untimely.

Second, MartianCraft's Amended Complaint states the scheme to improperly take control of MartianCraft "to utilize, waste[,] and otherwise misappropriate MartianCraft's assets . . . was a breach of fiduciary duty and conversion and otherwise violated applicable law." ECF No. 11 at ¶ 80. Wasting company funds on vexatious litigation (¶¶ 74–75), raising salaries unjustifiably to reward alleged conspirators for participating in the unlawful takeover (¶¶ 43, 78), and improperly inflating expense reimbursements (¶¶ 43–45), plausibly constitute conversion, thereby establishing

the underlying tort supporting the common law conspiracy claim. Too, MartianCraft's allegations that Mr. Brooks and Ms. Rhyne submitted false affidavits in support of their effort to take over the company (¶¶ 25–26, 31–32, 34, 36, 77), also may constitute an underlying tort sufficient to state a plausible claim for common law conspiracy.

Accordingly, the undersigned recommends Mr. Brooks's Motion to Dismiss, ECF No. 15, should be denied with respect to Count III, MartianCraft's statutory and common law conspiracy claim.

### D. Conversion claim

In Count IV, MartianCraft claims that Mr. Brooks and the alleged conspirators "exercised [wrongful and/or unjustified] dominion and control over" MartianCraft's funds. ECF No. 11 at ¶ 88–89.

Mr. Brooks contends that MartianCraft fails to state a claim for conversion because it asserted no facts regarding his role in exercising control over MartianCraft's money. ECF No. 16 at 14. Mr. Brooks also argues MartianCraft's money was paid to a third party, i.e., the attorneys, so he did not possess it. *Id.* Additionally, Mr. Brooks contends again that MartianCraft is attempting to recover attorneys' fees, which is not allowed under Virginia law. *Id.*

Conversion is "the wrongful exercise or assumption of authority over another's goods, depriving the owner of their possession, or any act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's rights." *Simmons v. Miller*, 261 Va. 561, 582 (2001); *Wells Fargo Equip. Fin., Inc. v. State Farm Fire and Cas. Co.*, 805 F.Supp.2d 213, 221 (E.D. Va. 2011). To establish a valid conversion claim, the plaintiff must have a property interest in and be entitled to immediately possess the item allegedly converted. *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994). A party who had the right to their funds at the moment the

17

conversion occurred had a sufficient property interest therein to state a cause of action under Virginia law. *Raleigh Radiology, Inc. v. Eggleston & Eggleston, P.C.*, No. 7:09cv334, 2009 WL 3764092, at *4 (E.D. Va. Nov. 10, 2009). In Virginia, plaintiffs can "assert conversion claims in conjunction with breach of contract claims[.]" *Id.*

Here, MartianCraft sufficiently alleges conduct by Mr. Brooks to support its claim for conversion. MartianCraft contends that Mr. Brooks assisted Mr. Rhyne and Mr. Servera in manufacturing a dispute regarding a payment to Dragon Forged designed to force Mr. Richter out of the company. ECF No. 11 at ¶¶ 15–16. After the company takeover, Mr. Brooks was appointed CEO of MartianCraft. *Id.* at ¶ 17. Once appointed CEO, Mr. Brooks and the alleged conspirators expended company funds by paying significant pay raises, bonuses and excessive expense reimbursements to themselves, and incurring and paying attorneys' fees to lawyers for the purpose of insuring their hold on the company. *Id.* at ¶¶ 43–44, 87–88. Because these funds were MartianCraft's—which Mr. Brooks does not dispute—and because MartianCraft has alleged that the takeover of the company in which Mr. Brooks participated was *ultra vires*, Mr. Brooks's and the alleged conspirators' wrongfully and without authority exercised dominion over MartianCraft's property by making these payments, depriving MartianCraft of its rights to its property. The fact that the money went to others besides Mr. Brooks does not defeat the conversion claim. *See Universal C. I. T. Credit Corp. v. Kaplan*, 198 Va. 67, 76 (Va. 1956). These factual allegations sufficiently state a claim for conversion. *Simmons*, 261 Va. 561 at 582.

Accordingly, the undersigned recommends that Mr. Brooks's Motion to Dismiss, ECF No. 15, be denied with respect to Count IV, MartianCraft's conversion claim.

18

## VII. RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** Mr. Brooks's Motion to Dismiss, ECF No. 15, be **DENIED** in its entirety.

## VIII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
June 2, 2023